UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FISHER-PRICE, INC., MATTEL, INC.
AND GRAVITY, INC.,

                    Plaintiffs,

    v.                                **DECISION AND ORDER**

EVENFLO COMPANY, INC.,                05-CV-280S

                    Defendant.

## I.  INTRODUCTION

Plaintiffs Fisher-Price, Inc. and Gravity, Inc. commenced this action on April 22, 2005, by filing a Complaint with the Court Clerk for the United States District Court, Western District of New York, alleging infringement by Defendant Evenflo Company, Inc. ("Evenflo") of U.S. Patent No. 6,851,375 ("the '375 patent").  On August 16, 2005, an Amended Complaint was filed adding Mattel, Inc. as a Plaintiff and alleging infringement by Evenflo of U.S. Patent No. 6,920,830 ("the '830 patent"), issued on July 26, 2005. Gravity and Mattel are the owners of all right, title and interest in, respectively, the '375 and '830 patents, and Fisher-Price has been granted certain exclusive rights with respect to each patent.

Presently before the Court is Mattel's and Fisher-Price's motion, filed on September 8, 2005, to enjoin Evenflo from infringing the '830 patent.[1]  Defendant requested, and was

---

[1] Plaintiffs submitted a Memorandum of Law in Support of Motion for Preliminary Injunction with Appendix (Pl. Memo); Declaration of James R. Hughes, Esq., dated September 7, 2005, with exhibits; Declaration of Tony DeSimone, dated September 19, 2005, with exhibits; Reply Memorandum of Law (Pl. Reply); Reply Declaration of James R. Hughes, Esq., dated January 24, 2006, with exhibits; Memorandum re: Supplemental Authority on Irreparable Harm; Reply Memorandum re: Supplemental Authority on

granted, the opportunity to conduct discovery relative to the preliminary injunction motion, and briefing on the motion and related issues was completed on March 10, 2006.  The Court conducted an evidentiary hearing and heard oral argument on May 24, 2006.  For the reasons stated below, the motion for a preliminary injunction is denied.

## II.  DISCUSSION

### A.  Plaintiffs' Motion for a Preliminary Injunction

Plaintiffs Mattel and Fisher-Price[2] moved for injunctive relief pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and the United States Patent Statute, 35 U.S.C. § 283 based upon Evenflo's purported infringement of claims 1, 12, 20 and 27 of the '830 patent.

### B.  Standard of Review

Whether a preliminary injunction should issue in a patent case turns upon four factors: (1) the movants' reasonable likelihood of success on the merits; (2) irreparable harm to the movants if preliminary relief is not granted; (3) a balance of hardships tipping

---

Irreparable Harm; Supplemental Declaration of Tony DeSimone, dated February 15, 2006, with exhibit; and Declaration of Ronald Asbach, dated February 14, 2006, with exhibits.

Evenflo filed a Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction (Def. Memo.); Declaration of Viresh Bijawat, dated January 12, 2006; Declaration of Jennifer L. Friedman, Esq., dated January 13, 2006, with exhibits; First Declaration of Michael R. McGee, Esq., dated January 13, 2006, with exhibits; Second Declaration of Michael R. McGee, Esq., dated January 13, 2006, with exhibits; Declaration of Joseph C. Mollendorf, dated January 13, 2006, with exhibits; Memorandum in Opposition re: Supplemental Authority on Irreparable Harm, and Motion in Limine with supporting Memorandum.

The Court held an evidentiary hearing and heard oral argument on May 24, 2006, after which the parties submitted agreed upon exhibits (referred to as "Pl. No. __" and "Def. No. __").  Among them is Plaintiffs' expert's report, which had not previously been authenticated or properly placed before the Court in support of the pending motion.  It will be considered part of the record pursuant to the parties' agreement.

[2]  Fisher-Price, Inc. is a wholly-owned subsidiary of Mattel, Inc. (Pl. Memo, p. 1) and, for purposes of this motion, these Plaintiffs are referred to, collectively, as Fisher-Price.

in movants' favor; and (4) the injunction's favorable impact on the public interest.  <u>Reebok</u> <u>Int'l Ltd. V. Baker, Inc.</u>, 32 F.3d 1552, 1555 (Fed. Cir. 1994) (<i>citing</i> <u>Hybritech, Inc. v. Abbott</u> <u>Labs.</u>, 849 F.2d 1446, 1451 (Fed. Cir. 1988)).   The burden is on the movants to show entitlement to a preliminary injunction.  <u>Reebok, Int'l.</u>, 32 F.3d at 155.

## C.      Factors to be Considered

### 1.      <u>Likelihood of Success on the Merits</u>

To demonstrate a likelihood of success on the merits, Fisher-Price must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) it will likely prove that Evenflo infringes the '830 patent, <u>and</u> (2) its infringement claim will likely withstand Evenflo's challenge to the validity and enforceability of the patent. <u>Amazon.com,</u> <u>Inc. v. Barnesandnoble.com, Inc.</u>, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (<i>citing</i> <u>Genetech,</u> <u>Inc. V. Novo Nordisk, A/S</u>, 108 F.3d 1361, 1364 (Fed. Cir. 1997)).  However, an "injunction should not issue if the party opposing the injunction raises a substantial question concerning infringement or validity" by asserting a defense that the movant cannot prove lacks substantial merit.  <u>Oakley, Inc. v. Sunglass Hut, Int'l</u>, 316 F.3d 1331, 1340 (Fed. Cir. 2003) (internal quotations and citation omitted).

## a.      Infringement

An analysis of the likelihood of infringement involves two steps; first, the meaning and scope of the claim is determined, and second, the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present, either literally or by substantial equivalent.  <u>Elektra Instrument S.A. v. O.U.R.</u> <u>Scientific Int'l, Inc.</u>, 214 F.3d 1302, 1306 (Fed. Cir. 2000) (citations omitted).   Claim

interpretation is a legal question, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996), but the application of the claim to the accused device is a question of fact, Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994).

In construing the meaning and scope of patent claims, courts look to the claim language, the specification and the prosecution history, in that order.   Phillips v. AWH Corp., 415 F.3d 1303, 1315-17 (Fed. Cir. 2005).   Courts first look to the words of the claims themselves and ascribe to them their ordinary and customary meaning.   Digital Biometrics, Inc. V. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir. 1998).   However, where review of the specification reveals a special definition given to a claim term by the patentee that differs from its customary meaning, the inventor's definition governs.   Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).   Courts may also consider the prosecution history, including representations made by the applicant about what the claims mean.   Id. at 1582-83.

In the instant case, Fisher-Price contends that it is likely to succeed on the merits because Evenflo infringes Claims 1, 12, 20 and 27 of the '830 patent.[3]   Pl. Memo, pp. 4-10, App. A.   Evenflo has raised defenses of non-infringement and patent invalidity.   With regard to the infringement analysis, the parties disagree on the meaning of the phrases "body portion" in claim 1; "contacting substantially all," "substantially the same," "first

---

[3] More specifically, Fisher-Price alleges that Evenflo's Simplicity and Envision model high-chairs infringe claims 1, 12 and 27 and that the Simplicity model also infringes claim 20.

configuration" and "second configuration" in claim 12; and "perimeter portion" in claim 20.[4]

### (i).  Claim 1

What is claimed in claim 1 is as follows:

A tray insert removably disposable within a cavity of a support, the support including a rim and a lower surface defining the cavity, said tray insert comprising:
a **body portion** including a first surface having a plurality of pockets formed therein and a second surface adapted to be disposed adjacent said lower surface of the support; and
a coupling member disposed on said **body portion**, and including a protrusion having an inclined surface, said coupling member adapted to releasably and mechanically engage a recess formed in the support within the cavity of the support.

See '830 patent, col. 5, lines 49-60.

On this claim, the parties disagree as to the meaning of the term "body portion." Evenflo contends that the limitation "coupling member disposed on said body portion" is not met by its accused high chair tray inserts because its coupling mechanisms are located on the perimeter of the outer portion of the tray inserts, not the body portion. According to Evenflo, in the '830 patent, the outer portion is a separately delineated area of the tray insert.  Def. Memo, pp. 7-8.

Fisher-Price contends that the "body portion" of a tray insert includes what are elsewhere identified in the patent claims as an "outer portion," an "extending portion" and a "perimeter portion."  Under Fisher-Price's proposed construction, a coupling member located anywhere on the tray insert would, necessarily, be disposed on the body portion.

This Court first notes that the word "portion" is ordinarily understood as designating

---

[4]  The disputed terms in claim 27 are among those disputed in claims 1 and 12.  Accordingly, the same construction will be applied to the terms in claim 27.

a part of a whole.  Thus, a whole object, such as a tray insert, may be comprised of two

or more portions.[5]

When the term "body" is used in connection with an inanimate object, its ordinary

meaning is:

> the main, central or principal part of something as **a**: the nave of a church
> **b**(1): the bed or box of a vehicle on or in which the load is placed (2): the
> enclosed or partly enclosed part of an automobile usu. not including the hood
> and fenders.

WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (1993); *see*

*also*, THE AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE: FOURTH ED. (2002) (online

at www.bartleby.com) (defining "body" as, among other things, "the passenger- and cargo-

carrying part of an aircraft, ship or other vehicle").

In this regard, Fisher Price argues that were the statement "the automobile includes

[a] body portion and a fender portion extending around the body portion" to appear in a

patent, "no one would argue that the fender portion of the car is not also part of the body

portion of the car."  Pl. Reply, pp. 3-4.  Hence, the "outer portion" of a tray insert must be

part of its "body portion."  However, this Court notes that Fisher-Price's chosen hypothetical

is directly contrary to the customary definition stated above, and this argument is unavailing

unless the term "body portion" is accorded something other than its ordinary meaning in

the '830 patent and its prosecution history.

Upon review of the patent, this Court is satisfied that no special meaning is indicated

in the claim language itself.  Claim 1 suggests only a general limit on the body portion's

---

[5]   It would be nonsensical for an object to be comprised of a single "portion," as there would be
nothing distinguishing the part from the whole.

size or dimensions vis-a-vis the support tray.  The fact that the claim 1 insert tray is "removably disposable <u>within</u> a cavity of a support," suggests that its main part—the body portion—rests entirely within the support's cavity.  Indeed, claim 1 expressly states that the body portion's second (lower) surface,[6] and the area of the body portion on which the coupling member is disposed, both rest within the cavity of the support.

Additionally, this Court notes that claim 1 does not include language limiting a tray insert's composition to a body portion and a coupling member only.  Thus, in this Court's view, the claim does not exclude the possibility that a tray insert meeting all the limitations of claim 1 may include additional portions or elements as well.

The Federal Circuit recently reiterated that the specification is the single best guide to the meaning of a claim term.  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*) (*citing* <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also*, <u>Merck & Co. V. Teva Pharms. USA, Inc.</u>, 347 F.3d 1367, 1371(Fed. Cir. 2003) ("[C]laims must be construed so as to be consistent with the specification, of which they are a part.").  Here, because claim 1 provides limited guidance as to the construction of the term "body portion," this Court looks to the language of the specification, which must describe the claimed invention in "full, clear, concise and exact terms," 35 U.S.C. §112, par. 1.

Based on the written descriptions and illustrations of the specification, and construing that information consistent with the patent claims, this Court concludes that the

---

[6] The terms "first surface" and "second surface," used to indicate areas of the body portion, are not defined in claim 1.  They are defined in the specification as the upper (first) and lower (second) surfaces.  Col. 3, lines 43-45.

"body portion" of the claimed tray insert consists of the lower surface or floor of the tray insert's cavity, the outer wall(s) of the insert's cavity rising no further than the level of the support's rim, and any interior ridges or walls forming pockets within the insert's cavity. Furthermore, to the extent that an insert tray includes areas extending outward from its outer cavity wall(s), such areas are not part of the body portion.

In reaching this conclusion, the Court notes the following descriptions and illustrations:

> In one embodiment, the liner <u>includes</u> an outer portion that is releasably engageable with a rim of the support.  '830 patent, col. 2, lines 22-23 [emphasis supplied].[7]

> In the illustrated embodiment [Fig. 5], tray insert 200 includes a body portion 205 <u>and</u> an outer portion 210 extending around the body portion.  *Id.*, col. 3, lines 41-43 [emphasis supplied].[8]



**FIG. 5**

> The body portion includes a cavity.  *Id.*, col. 3, line 51.  Tray insert 250 includes a body portion 252 having a central large pocket or cavity 256 and several smaller pockets or cavities 254.  *Id.*, col. 4, lines 19-22.[9]

> Tray insert 200 includes an extending, engagement, or side portion 230 that

---

[7] Liner is another term for tray insert. '830 patent, col. 3, lines 39-40.  Tellingly, it is the liner, not the body portion, that <u>includes</u> an outer portion.

[8] Use of the connector "and" indicates two distinct portions of the whole—*i.e.*, the tray insert or liner.

[9] Throughout the specification, the cavity(ies) is the only feature of the tray insert identified as being included within the "body portion."

<u>extends from the rear of the body portion</u> 205 of the tray insert 200.  The <u>extending portion 230 includes a flange</u> 232 that extends downwardly from the extending portion 230 and <u>forms a channel 234 with the body portion</u> 205 of the tray insert 200."  *Id.*, col. 3, lines 57-63 and Fig. 7 [emphasis supplied].[10]



**FIG. 7**

A further embodiment of the invention illustrated at Figures 13-17, and particularly, Figure 14, shows that "the body portion 205 of the tray insert 200 is <u>aligned with</u> the cavity 114 of tray 100."[11]  *Id.*, col. 4, lines 47-49 [emphasis supplied].  The same Figure 14 shows a "'side portion' 230 that <u>extends from the rear</u> of the 'body portion' 205 of the tray insert" (*Id.*, col. 3, lines 58-59) [emphasis supplied] and a "'seating portion' 240 extend[ing] along the front and sides of tray insert 200" (*Id.*, col. 5, lines 4-5), the upper surface of which is level with the upper surface of the rim of the support.



**FIG. 14**

---

[10]  The "body portion" on Figure 7 that forms a channel with the flange of the "side portion" is the outer wall of the tray insert's cavity.

[11]  If one draws vertical lines on Figure 14 that are "aligned with" the cavity walls of the support, the outer limits of the "body portion" are readily apparent.  The body portion extends only to the cavity's outer wall and no further.

Based on the claim and specification, this Court finds that a tray insert may consist of a body portion and coupler only, or may include an outer portion, extending portion and/or seating portion.  These additional portions extend from the body portion outward and engage with the rim of the support's cavity by extending over the rim or being seated adjacent or on top of the rim.

This Court is aware that, for a patent claim to be infringed, every limitation in the claim must be found in the accused device.  <u>Pfizer, Inc. V. Teva Pharms. USA, Inc.</u>, 429 F.3d 1364, 1376 (Fed. Cir. 2005) (citation omitted).  As noted above, Evenflo claims its accused high chair models, the Simplicity and the Envision, do not meet  the limitation of having the "coupling member disposed on said body portion."  The parties have submitted a support tray and tray insert for each model for the Court's examination.  Pl.'s Exs. 25A, 25B, 27A and 27B.

Upon examination of these exhibits, this Court concludes that Evenflo has raised a substantial question as to infringement of claim 1.  Based on the foregoing claim construction, it finds that the body portions of the Evenflo inserts are surrounded by outer portions, and the coupling members are disposed on the perimeters of the outer portions, not the body portions.

This Court also finds that Fisher-Price has not succeeded in demonstrating that Evenflo's defense lacks substantial merit.  In addition to the previously-mentioned car/fender analogy, Fisher-Price argues in its reply memorandum that because claim 1 does not recite an outer portion separate from the body portion, it is error to view them as

distinct portions of a tray insert.  Pl. Reply, p. 5.[12]  As already noted above, while claim 1 requires the presence of a body portion and coupling member, it does not exclude the possibility that a tray insert may contain additional elements or portions.  Therefore, Fisher-Price's argument in this regard is unavailing.

Finally, Fisher-Price points to dependent claim 4, which calls for: "[t]he tray insert of claim 1, wherein said body portion includes an extending portion configured to conform to engage a portion of the support rim." '830 patent, col. 5, lines 65-67.  Contrary to the claim 1 phrasing, the specification description and illustrations state that an extending portion is included on the tray insert, not the body portion, and extends from the rear of the body portion over a segment of the top and outer wall of the support.

Fisher-Price urges that to construe claim 1 consistent with its dependent claim 4, one must conclude that the extending portion is included on the body portion and, because the extending portion "must necessarily be a reference to what is described in Fig. 5 as the 'outer portion,'" the outer portion and its perimeter must also be part of the body portion. Pl. Reply, p. 4.

The Court rejects Fisher-Price's underlying premise that an "extending portion" and "outer portion" are one and the same.  *Id.*  There is nothing in the claim language or specification suggesting that an extending portion 230 which "extends from the <u>rear</u> of the body portion" only ('830 patent, col. 3, lines 58-59) and engages a "<u>portion</u> of the support

---

[12]  In support of its position, Fisher-Price notes that the outer portion of the tray insert is integrally molded with the body portion and suggests that this means the portions are not to be viewed as distinct. While the observation regarding the tray insert's construction is correct, that fact is not persuasive in light of the specific patent language indicating that the outer and body portions are discrete elements of the tray insert.  This is particularly so where the specification states that the coupler, which is clearly identified as an element separate from the body portion, may be "integrally formed on the bottom surface" of the tray insert.  '830 patent, col. 4, lines 9-10.

rim" only (*Id.*, claim 4) is the same as "an outer portion 210 extending <u>around</u> the body portion." (*Id.*, col. 3, lines 41-43) [emphasis supplied].  Nor is there any suggestion in the '830 patent that these two portions form some larger integral portion that yet again is part of some larger whole.

Additionally, this Court notes that Fisher-Price's claim construction analysis ignores the  fact that independent claims 12 and 27, both of which are also at issue here, expressly include the "outer portion" on the liner, not the body portion.  *Id.*, col. 6, lines 22-24 and col. 8, lines 2-3.  To construe claim 1 as Fisher-Price suggests would be inconsistent with claims 12 and 27.

In sum, Fisher-Price has not, at this preliminary injunction stage, shown a likelihood of success on the merits as to infringement of claim 1.

> ### (ii).   Claim 12

What is called for in claim 12 is the following:

> A tray set comprising:
> a support having a cavity formed therein, said cavity being defined by a rim and a support surface within said rim, said rim further defining a perimeter of said support and having a **first configuration**; and
> a liner disposable within said cavity and contacting **substantially all** of said support surface, said liner having an outer portion releasably engagable with said rim of said support, said outer portion having a **second configuration**, said first configuration being **substantially the same** as said second configuration.

Evenflo raises two defenses for non-infringement relative to claim 12.  First, it contends that its liner does not "contact[ ] substantially all" of the support surface of the support tray.  Second, it argues that its tray sets do not meet the "substantially the same configuration" limitation.  Both of these defenses are discussed below, *ad seriatim*.

In the context of claim construction, "expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the <u>minor</u> variations that may be appropriate to secure the invention" and "indeed may be necessary in order to provide the inventor with the benefit of his invention." <u>Verve LLC v. Crane Cams, Inc.</u>, 311 F.3d 1116, 1120 (Fed. Cir. 2002) [emphasis supplied]. "Words of approximation, such as 'generally' and 'substantially,' are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter." <u>Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.</u>, 340 F.3d 1298, 1311 (Fed. Cir. 2003) (citations and internal quotation marks omitted).

Here, both parties submitted expert reports in support of their respective claim construction arguments, and Fisher-Price's expert also testified at the preliminary injunction hearing.  With regard to the "contacting substantially all" limitation, Evenflo's expert, Dr. Mollendorf, states in his expert report that Evenflo's accused tray inserts "do not even contact 30% of the tray support surface" and therefore cannot be said to infringe claim 12. Def. Memo, p. 9; Mollendorf Decl., Ex. A, pp. 6, 12-13 ("the Evenflo tray insert rides on highpoints and ridges that comprise a small portion of the contacting support surface and that preclude substantial contact").[13]

Fisher-Price counters that the general nature of this tray product is such that manufacturing tolerances for smoothness and fit cannot be expected to be particularly tight and further, that the drawings (*e.g.*, '830 patent, Fig. 15) indicate that "contacting

---

[13]   Dr. Mollendorf reached this conclusion by inserting paper strips between the insert and support trays of the accused products.  He concluded that contact existed only in those areas where a strip of paper could not be fed between the tray's surfaces.  He then computed the portion of the total possible contact area for each tray set at which contact actually occurs.

substantially all" does not literally mean surface-to-surface contact between the majority of points on the tray insert and support.  What is important is that the tray insert "covers substantially all of the cavity."  Pl. Reply, pp. 6-7; Col. 4, lines 17-18.  Alternatively, Fisher-Price offered the expert testimony of Professor Visser, who identified irregularities in the lower surface of the Evenflo insert trays as pin marks created by the injection molding process.  Tr. at 147:20-148:6.   His opinion is that, assuming an unidentified number of these pin points are distributed in a way that provides support, the "contacting substantially all" limitation is met.  Tr. 148:6-151:13.

In construing the phrase at issue here, "the question is not whether the word 'substantially' has a fixed meaning as applied to [the challenged term or phrase], but how the phrase would be understood by persons experienced in the field . . ., upon reading the patent documents."  Verve LLC at 1119-20.

Upon reviewing the patent documents, the Court rejects Fisher-Price's contention that persons experienced in the field would view the terms "covering substantially all" and "contacting substantially all" as interchangeable.  Under the doctrine of claim differentiation, "different claims are presumed to be different in scope."  Impro II Licensing S.A.R.L. v. T-Mobile USA, Inc., 2006 U.S. App. LEXIS 11675, at *7 (Fed. Cir. May 11, 2006); see also, Intermatic Inc. v. Lamson & Sessions Co., 273 F.3d 1355, 1364 (Fed. Cir. 2001).  Construing the claim term as Fisher-Price suggests would violate that doctrine.

Specifically, claim 20, which is also in dispute here, describes a tray kit.  Two of its dependent claims, 23 and 25, use the terms "contacting substantially all" and "covering substantially all," respectively, to describe limitations on the interface between the insert tray and the support.   Were one to replace the word "contacting" in claim 23 with

14

"covering," as Fisher-Price suggests is appropriate, this Court is of the opinion that there would be no limitation in claim 25 not already present in claim 23.

Similarly, independent claims 12 and 27 both call for tray sets.  Though both include some identical language and phrases, claim 12 employs the term "contacting substantially all" while claim 27 employs the term "covering substantially all."  *Compare*, col. 6, lines 16-26 and col. 7, line 18 - col. 8, line 11.  In this Court's view, upon reading the patent documents as a whole, persons experienced in the field at the time of the invention would view this as a conscious differentiation, rather than the same limitation described with different terminology.

Keeping in mind the Federal Circuit's characterization of the word "substantially" as one of approximation, this Court finds nevertheless that the term is commonly understood as meaning "largely" or "most"—*i.e.*, at minimum, some figure greater than 50 percent.  Even avoiding the imposition of a stringent numerical cutoff, this Court has no trouble rejecting Professor Visser's construction of "contacting substantially all" as meaning discrete points of contact distributed in such a way as to provide support.[14]  The Court also finds unpersuasive Professor Visser's suggestion that, by the act of inserting paper strips between the Evenflo insert and base trays, it may be possible to lift the insert away from points of contact.  Tr.  143:16-144:16.[15]

Having examined the accused devices, as previously discussed, this Court

---

[14]  Accepting Professor Visser's logic would again render meaningless the distinction between "contacting substantially all" and "covering substantially all"—*e.g.*, an umbrella can cover substantially all of something it has little or no contact with.

[15]  Professor Visser took care in his discussion to state that he was speaking of this possibility generally and "didn't say that of [Mollendorf's] test."

concludes that Evenflo has raised a substantial question as to Fisher-Price's likelihood of success on infringement based, in part, on its demonstration of contact between less than 30 percent of the surfaces of the Evenflo tray sets.   On the other hand, Fisher-Price has not succeeded, at this juncture, in showing that Evenflo's first defense to claim 12 infringement lacks substantial merit.[16]

Based on the foregoing, the Court would not ordinarily need to resolve Evenflo's second challenge to claim 12 infringement.   However, because the phrases "first configuration," "second configuration" and "substantially the same" are also in dispute in claim 27, this Court will also consider Evenflo's second defense; that it's tray inserts do not meet the "substantially the same configuration" limitation of claim 12.

Evenflo advocates for a claim interpretation that measures "configuration" in three dimensions, and argues that, when viewed in their totality, the silhouettes and depths of the tray inserts and the supports of its accused products have such significant differences that the "substantially the same" limitation is not met.

On reading the claims, it seems clear to this Court that Evenflo seeks to impose a far more complex construction than is warranted by the claim language.   Upon a plain reading of claim 12, the contour of the support tray's rim that defines both the cavity and

---

[16]   Fisher-Price alleges literal infringement of claims 1, 12, 20 and 27.   However, it states in its reply memorandum, that it "<u>may</u> also rely on the doctrine of equivalents" with respect to this aspect of claim 12 in the event the Court concludes that a substantial question has been raised regarding the "contacting substantially all" limitation.   Pl. Reply, pp. 8-9.   Fisher-Price conceded at the hearing that it had not briefed application of the doctrine to the accused products (Tr. 19:14-20:5) and its ruminations about unspecified arguments it may make after the Court decides the issues already presented does not place the doctrine before the Court at this time.

the perimeter[17] of the cavity's support surface is the "first configuration."  In other words,

the "first configuration" follows the contour of the edge or inner wall[18] of the rim surrounding

the cavity.  The liner's outer portion releasably engages with the rim of the support and has

a second configuration.[19]  Thus, it is readily apparent that this limitation seeks to define the

relationship between the rim defining the support's cavity and the outer portion of the insert

tray.  There is nothing in the claim language that implicates the outer geometry of the

support tray or the depth of the respective trays.  Moreover, the foregoing construction of

"configuration" is consistent with the use of the term "contour" in the patent specification:

> The outer portion of the liner has substantially the same configuration as the contoured shape of a cavity in the support.  '830 patent, col. 2, lines 23-25.

> Cavity 114 [of the base tray] is bounded by a lower surface 113 and rim or ridge 110.  *Id.*, col. 2, lines 54-55.

> [T]he tray insert 200 includes a perimeter 218 that defines a contour for tray insert 200 that conforms to the contour of the cavity 114 formed in the base tray 100.  *Id.*, col. 4, lines 14-17.

Having compared claim 12 with the accused devices, this Court concludes that

Evenflo has failed to raise a substantial question as to whether the "substantially the same"

configuration limitation is met.

Nevertheless, because Evenflo has raised a substantial question as to the

"contacting substantially all" limitation, Fisher-Price has not demonstrated a likelihood of

---

[17]  A perimeter is the "boundary of a closed plane figure"—*e.g.* the perimeter of a circle. WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (1993).

[18]  In the illustrated embodiment, ridge or rim 110 includes . . . an inner surface 118. '830 patent, col. 2, lines 55-57, Fig. 3.

[19]  As already discussed in connection with claim 1, the outer portion surrounds the liner's body portion and thus its shape or configuration is defined by the liner's cavity.

success on the merits as to infringement of claim 12.

### (iii).   Claim 20

What is claimed in claim 20 is the following:

> A tray kit comprising:
>     a first tray having a body portion and a **perimeter portion** extending around said body portion, said body portion having a plurality of pockets formed therein, said **perimeter portion** including a latch disposed on a lower surface thereof; and
>     a second tray, said second tray having an upper surface with a cavity formed therein and defined by a rim extending around said cavity, said rim including a recess formed therein, said latch of said first tray being selectively coupleable with said recess to retain said first tray in said cavity.

Fisher-Price alleges infringement of claim 20 by Evenflo's Simplicity tray set only, and points to two protrusions integrally molded on the rear lower surface of the body portion of the tray insert.  Pl. Reply, p. 10; Pl. No. Demo 1 (Tab 5), Figs. S-20B, S-20C and S-20D.  Fisher-Price advocates for a construction that includes the "perimeter portion" (as well as the "outer portion") of the tray insert on the "body portion."  Pl. Reply, p. 10, citing '830 patent, Figs. 5 and 6.

Evenflo, consistent with its position on claim 1, argues that the "perimeter portion" of the claimed tray insert is completely separate and distinct from the "body portion" of the insert.  Def. Memo, pp. 14-15.  It urges that, because the rear latches are located on the body portion, rather than the perimeter portion, its Simplicity insert tray does not infringe claim 20.

This Court notes that the phrase "perimeter portion" does not appear anywhere in the patent except claim 20.  However, the claim is worded in such a way that one assumes the body and perimeter portions are discrete parts of the insert tray, with the "perimeter

portion extending around [the] body portion."

The specification does not provide further guidance; the phrase "perimeter portion" is not used at all and the  word "perimeter," standing alone, appears only once relative to the insert tray:

> [T]he tray insert 200 includes a perimeter 218 that defines a contour for tray insert 200 that conforms to the contour of the cavity 114 formed in the base tray 100.  Col. 4, lines 14-17; *see also*, Figs. 5 and 7.

When perimeter 218 is shown on Figure 5, *supra*, it appears as the outer boundary of outer portion 210.  However, the use of the term "portion" in claim 20, along with a reference to a lower surface thereof, indicates to this Court that the "perimeter portion" is a substantial element, rather than a boundary line.

In claim 20, the body portion is described as having pockets formed therein and the perimeter portion as including a latch on its lower surface.[20]  Were the  perimeter portion part of the body portion, as Fisher-Price contends, this claim could more clearly and simply read "body portion having a plurality of pockets formed therein (or in its upper surface) and a latch disposed on its outer (or lower) surface."  However, that is not how the claim reads. Rather, the "perimeter portion" reads as a distinct element of the insert tray that extends around its "body portion."

Considering the patent language in its entirety, this Court concludes that the claimed "perimeter portion" of claim 20 and the "outer portion"[21] of claims 12 and 27 are one and

---

[20]  The terms "latch" and "coupler" are not defined in the patent documents, but do not appear to be interchangeable.  Couplers are described as being "releasably engageable" whereas the latch is "selectively coupleable."

[21]  As with the "perimeter portion," the patent describes and shows the "outer portion" extending around the "body portion."  Col. 3, lines 41-43, Fig. 5.

the same.[22]  "[C]laim drafters can . . . use different terms to define the exact same subject matter.  Indeed [the Federal Circuit] has acknowledged that two claims with different terminology can define the exact same subject matter." Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380-81 (Fed. Cir. 2006) (citations omitted).

Applying this construction to the accused device, and considering Fisher-Price's statement that the allegedly infringing protrusions are integrally molded on the bottom surface of the "body portion," this Court concludes that Fisher-Price has not demonstrated a likelihood of success on the merits as to infringement of claim 20.

### (iv).   Claim 27

What is claimed in claim 27 is the following:

A tray set comprising:
a support having a cavity formed therein, said cavity being defined by a rim and a lower surface within said rim, said rim further defining a perimeter of said support and having a **first configuration**, said support including a recess formed in said rim; and
a liner disposable within said cavity and covering substantially all of said lower surface, said liner having an outer portion engagable with said rim of said support, said outer portion having a **second configuration**, said first configuration being **substantially the same** as said second configuration, said liner including a body portion and a **coupler disposed on said body portion**, said coupler positively engaging said recess in said support and coupling said liner to said support such that said liner is releasably engagable with said support.

The defenses raised by Evenflo in connection with claim 27 are precisely the same as those presented on claims 1 and 12 with respect to the highlighted terms.  There is no need to repeat the analysis here.  Having previously determined that Evenflo succeeded

---

[22]  Ascribing the same construction to "perimeter portion" in claim 20 and "outer portion" in claims 12 and 27 is not prevented by the doctrine of claim differentiation because other distinguishing limitations remain.

in raising a substantial question as to whether the accused products meet the limitation of a "coupler disposed on said body portion," Fisher-Price has not shown a likelihood of success on the merits as to infringement of claim 27.

## IV. CONCLUSION

Evenflo has succeeded in raising a substantial question of non-infringement with regard to each of the claims identified by Fisher-Price.  Because Fisher-Price has not demonstrated a likelihood of success on the merits, the motion for a preliminary injunction is denied.

## ORDERS

IT HEREBY IS ORDERED, that the Motion for Preliminary Injunction by Plaintiffs Mattel, Inc. And Fisher-Price, Inc. (Docket No. 7) is DENIED.


SO ORDERED.

Dated:       June 26, 2006
             Buffalo, New York

<u>/s/William M. Skretny</u>
 WILLIAM M. SKRETNY
United States District Judge